Sealed

UNSEALED PER ORDER

(sealed and unofficial staff access to this instrument are prohibited by court order.)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

United States District Court
Southern District of Texas
FILED

JUN 1 7 2009

Michael N. Milby, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | §  CRIMINAL NUMBER 09- |
| | § |
| BRENT A. CARTER, and | §  **H - 09 - 336** |
| MICHAEL N. SWETNAM, JR. | § |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### A.   INTRODUCTION

At all times material to this indictment:

1.    Valley Baptist Health System (Valley Baptist) was the largest non-profit health care system in South Texas and operated medical centers in Brownsville and Harlingen and delivered services in other parts of South Texas.

2.    Valley Baptist included a retirement community, a fitness center, a medical equipment distributor, a managed care health plan provider, and a network of health care facilities offering specialty services such as home health, hospice, dialysis, and rehabilitation.

3.    Smith-Reagan was a group of licensed insurance professionals located in the Brownsville, Texas area that provided various types of insurance to its customers, one of which was Valley Baptist.

3a.     Defendant **MICHAEL N. SWETNAM, JR.** joined or became affiliated with Smith-Reagan in 1984. **SWETNAM** held various Texas insurance licenses, including licenses to sell both surplus and general lines of insurance. He was also a licensed reinsurance broker.

3b.     Defendant **BRENT A. CARTER** joined or became affiliated with Smith-Reagan in 2004. **CARTER** had a Texas insurance license to sell general lines of insurance.

3c.     **SWETNAM** and **CARTER** were located at the same physical address as Smith-Reagan in the Brownsville area. Since 1990, **SWETNAM** has owned Swetnam Insurance Services in San Benito, Texas. He was also Vice President of Smith-Reagan in San Benito from 1984 until 2008. Swetnam Insurance Services office was located in the corner of Smith-Reagan's office.

4.     In 2008, Valley Baptist solicited formal bids from several insurance brokerage firms for its various insurance coverage needs and began using a new insurance brokerage company. This new company subsequently discovered that Valley Baptist had purchased various non-existent policies and policies with overcharged premiums from defendants **MICHAEL N. SWETNAM, JR**. and **BRENT A. CARTER**, Swetnam Insurance Services, and Smith-Reagan.

## COUNT ONE
### (Conspiracy)

**A.     INTRODUCTION**

1.     The Grand Jury adopts, realleges, and incorporates herein Paragraphs One through Four of the Introduction of the Indictment as if set out fully herein.

**B.     THE CONSPIRACY AND ITS OBJECTS**

2.     From in or about August 2006 and continuing until in or about April 2008, in the Southern District of Texas and elsewhere, the defendants,

### BRENT A. CARTER, and
### MICHAEL N. SWETNAM, JR.

did knowingly combine, conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury to:

(a)     knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises and in execution of said scheme and artifice, transmit or cause to be transmitted by means of wire in interstate commerce, writings, signs, signals, pictures and sounds in violation of Title 18, United States Code, Section 1343 (Wire Fraud);

(b)     knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises and in execution of said scheme and

3

artifice, placed and caused to be placed in any post office or authorized depository

for mail matter, a matter or thing to be sent and delivered by the Postal Service or

any private or commercial interstate carrier, in violation of Title 18, United States

Code, Section 1341 (Mail Fraud).

## C.    THE MANNER AND MEANS OF THE CONSPIRACY

3.    It was a part of the conspiracy that:

(a)    the defendants would and did sell non-existent insurance policies

and/or coverage to Valley Baptist;

(b)    the defendants would and did misrepresent and overstate premiums

on insurance policies and/or coverage that they sold to Valley Baptist causing the

defendants to make a profit of over 100% over the actual cost of the insurance

policies;

(c)    the defendants would and did forge and alter insurance documents

that were presented to Valley Baptist in connection with the sale of insurance

policies and/or coverage to the hospital;

(d)    the defendants would and did send invoices to Valley Baptist for

non-existent insurance policies and/or coverage through the U.S. mail;

(e)    the defendants would and did wire transfer funds to an insurance

underwriter in New York in connection with overstated premiums on the

insurance policies and/or coverage to keep the New York underwriter ignorant of

the scheme to defraud Valley Baptist;

(f)   the defendants would and did deposit the proceeds of the fraud into a checking account that one or more of the defendants controlled and then obtained cashier's checks to pay each co-conspirator a portion of the proceeds.

## D.   OVERT ACTS

4.   In furtherance of the conspiracy, and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Southern District of Texas:

(a)   In or about August 2006, **MICHAEL N. SWETNAM, JR.** telephoned W.C., an employee of Valley Baptist, and told him that he could save Valley Baptist money by purchasing insurance through a non-admitted carrier. **SWETNAM** set up a meeting in Mexico where he later provided W.C. with fraudulent insurance documents purporting to provide insurance coverage to Valley Baptist.

(b)   On or about August 29, 2006, **SWETNAM** and **BRENT A. CARTER** traveled to Nuevo Progresso, Jaulpes, Mexico and met with W.C. and other Valley Baptist representatives, and provided them with documents in connection with a fraudulent 2006-2007 hurricane policy that reflected a premium of $936,000 for windstorm damage.

(c)   On or about September 1, 2006, **SWETNAM** and **CARTER** caused

5

Valley Baptist check number 53863 to be issued in the amount of $936,000 to

Swetnam Insurance Services for the non-existent 2006-2007 insurance policy.

(d)  On or about September 5, 2006, **SWETNAM** deposited check number

53863, in the amount of $936,000, to his bank account number ending in 5500, at

McAllen National Bank.  He then wrote a check to **CARTER**, dated 9/5/06, in the

amount of $425,000 in connection with sale of the non-existent insurance

coverage.

(e)  On or about August 2006, **SWETNAM** used the U.S. mail to send

Valley Baptist an insurance binder regarding their Zurich Health Care Umbrella

Liability Policy for the 9/06 to 9/07 period showing a false premium amount due

of $2,380,638.42.

(f)  On or about September 6, 2006, **SWETNAM** used the U. S. Mail and

sent to Valley Baptist an invoice, showing a premium due of $2,380,638.42.

(g)  On or about September 24, 2006, **CARTER** sent an email to

**SWETNAM** and other individuals which stated in part, " . . . trust me and the cash

will continue to flow."

(h)  On or about November 30, 2006, **SWETNAM** caused Zurich,

America to mail to his company, Swetnam Insurance Services in San Benito,

Texas a Health Care Umbrella Liability Policy for the 9/06 to 9/07 period, with the

Zurich representative's signature and showing the true premium of $1,460,824, so that he could fabricate false policy documents showing an overstated premium amount with the Zurich representatives signature.

(i) On or about November 30, 2006, **SWETNAM** caused a Zurich representative's signature to appear on an insurance policy that showed a false premium amount of $2,380,638.42 for Valley Baptist—without the knowledge or authorization of the Zurich representative.

(j) On or about November 30, 2006, **SWETNAM** mailed to Valley Baptist an altered Health Care Umbrella Liability Policy for the 9/06 to 9/07 period with Zurich (Steadfast), showing a false/overstated premium of $2,380,638.42.

(k) On or about September 20, 2006, **SWETNAM** deposited a check paid by Valley Baptist for the insurance policy with the overstated premium in the amount of $2,380,638.42 to his bank account. He subsequently purchased cashier's checks in the amount of $250,000, payable to his co-defendant **CARTER** and other individuals.

(l) On or about September 20, 2006, **CARTER** deposited his cashier's check for $250,000 to his account at Frost National Bank.

(m) On or about September 20, 2006, **SWETNAM** split his $250,000 and

7

deposited part of it to his account at Texas State Bank and part of it to his account at Frost National Bank.

(n)  On or about February 1, 2007, **SWETNAM** wire transferred to Zurich, America the premium for the Zurich Excess Umbrella Liability coverage in the amount of $1,314,741.60.

(o)  In or about June 2007, **SWETNAM** called a Valley Baptist representative and told him that **SWETNAM** could get the windstorm coverage for Valley Baptist "cheaper" than the year before.

(p)  On or about June 4, 2007, **SWETNAM** sent through U. S. Mail an invoice in the amount of $884,000.00 to Valley Baptist for their Named Storm insurance coverage for the 2007-2008 season.

(q)  On or about June 7, 2007, **SWETNAM** caused Valley Baptist to issue him check number 72692 in the amount of $2,729,432.00, which included the premium of $884,000.00 for a non-existent insurance policy.

(r)  On or about June 7, 2007, **SWETNAM** deposited into his account number a check in the amount of $2,729,432.00 which included the $884,000.00 false premium for the 07/08 hurricane policy for Valley Baptist **SWETNAM,** then purchased cashier's checks in the amount of $290,242.12 to **CARTER** and another individual.

8

(s)  On or about June 7, 2007, **SWETNAM** deposited his $290,242.12 share into his account at Frost National Bank.

(t)  On or about August 31, 2007, **SWETNAM** mailed via U.S. Mail Confirmation of Insurance/Assurance Binder purporting to insure Valley Baptist for 6/1/07 to 6/1/08 for Hurricane/Named Storm, showing a false company called RAC RE, LTD and a false premium of $884,000.

(u)  On or before August 2007, **SWETNAM** and another individual traveled to New York and met with G.H., an employee of Zurich, America, to discuss the insurance policy for Valley Baptist.

(v)  On or about August 31, 2007, **SWETNAM**  mailed via U. S. Mail to Valley Baptist an Interim Insurance Binder and Premium Billing document which had been altered, along with a false invoice regarding their Zurich Health Care Umbrella Liability Policy for the 9/07 to 9/08 period.  The documents reflected a false/overstated premium of $2,521,050.00—the Zurich representative had no knowledge of and did not authorize the alteration of the policy.

(w)  On or about August 31, 2007, **SWETNAM** caused to be mailed from Zurich, America an invoice to his company regarding Valley Baptist for umbrella health care insurance for the true premium amount of $1,296,295.00, less commission of $129,629.50 for a net amount due of $1,166,665.50.

(x)  On or about September 5, 2007, **SWETNAM** deposited check number 000003 paid by Valley Baptist for the policy with the false/overstated premium, in the amount of $2,521,050.00 to his bank account and subsequently purchased cashier's checks in the amount of $274,040.90 each, payable to **CARTER** and other individuals known to the grand jury.  **SWETNAM** had his $274,040.90 deposited to his account number ending in 4874 at Frost Bank.

(y)  On or about September 5, 2007, **CARTER** deposited his cashier's check for $274,040.90 into his bank account at McAllen National Bank and subsequently used the funds.

(z)  On or about September 24, 2007, **SWETNAM** wire transferred to Zurich, America the true premium amount, less 10% commission, of $1,166,665.50 for the 07/08 Excess Umbrella Health Care Policy.

(aa)  On or about November 28, 2007, **SWETNAM** caused Zurich, America to mail to Swetnam Insurance Services in San Benito, Texas a Health Care Umbrella Liability Policy for the 9/07 to 9/08 period, showing a true premium of $1,296,295.00.

(bb)  On or about November 28, 2007, **SWETNAM** caused a Zurich representative's signature to appear on an insurance policy, showing a false premium amount of $2,328,500 for Valley Baptist.

(cc)  On or about November 28, 2007, **SWETNAM** mailed to Valley Baptist a Zurich Health Care Umbrella Liability Policy for the 9/07 to 9/08 period showing a false/overstated premium of $2,328,500.

(dd)  On or about January 16, 2008, **CARTER** stated in an email regarding income to an individual which stated "don't give me any of that good ol' boy rhetoric about just trying to help.  You are culpable in this one as well.  You are just lucky I am as greedy as you."

(ee)  On or about January 17, 2008, **SWETNAM** sent an email to **CARTER** and other individuals that discussed Valley Baptist, stating in part "I will work on the hospital and try to preserve the commission & fee income for the four of us."  He added " . . . we agreed to split the account's commissions and fee income equally . . .  and then you and I shook hands to consummate this deal."

(ff)  On or about March 10, 2008, after a civil lawsuit was filed by Valley Baptist against **SWETNAM**, **SWETNAM** sent a letter to Valley Baptist and stated " . . . found out that RAC RE..not licensed by the British Virgin Islands Insurance Department due to various pending items . . . " Moreover, not withstanding there was no company called RAC RE and that Landmark American did not reinsure Valley Baptist, **SWETNAM's** letter further stated " . . . RAC RE was 100% reinsured by Landmark American Insurance Company."

All in violation of Title 18, United States Code, Section 371

11

## COUNTS 2-8
(Mail Fraud)

**A.     INTRODUCTION**

1.     The Grand Jury adopts, realleges, and incorporates herein Paragraphs One through Four of the Introduction of the Indictment as if set out fully herein.

**B.     THE SCHEME TO DEFRAUD**

2.     From in or about August 2006 and continuing until on or about April 2008, in the Southern District of Texas and elsewhere,

**BRENT A. CARTER, and
MICHAEL N. SWETNAM, JR.**

defendants herein, aided and abetted by others known and unknown to the grand jury, did knowingly devise and intend to devise a scheme and artifice to defraud Valley Baptist, and to obtain money and property by false and fraudulent pretenses, representations and promises, all as more fully set forth below.

**C.     THE MANNER AND MEANS OF THE SCHEME TO DEFRAUD**

3.     Among the deceitful and dishonest means by which the defendants sought to accomplish and did accomplish the purpose of the scheme to defraud were the acts set forth in paragraph Three of the manner and means contained in Counts One of the Indictment, hereby re-alleged and incorporated as if fully set forth in these Counts of the Indictment.

## C.    **EXECUTION OF THE SCHEME TO DEFRAUD**

    4.    On or about the dates set forth below, in the Southern District of Texas, and elsewhere, for the purpose of executing the scheme and artifice to defraud Valley Baptist and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and intending to do so, the defendants knowingly sent or caused to be delivered through the United States Mail or by any private or commercial interstate carrier, according to the directions thereon, either from or to the Southern District of Texas, the items described below:

| COUNT | DATE | ITEM MAILED |
|---|---|---|
| 2 | August 2006 | Zurich Insurance Binder for Zurich Health Care Umbrella Liability Policy for Sept. 2006 through Sept. 2007 period that was sent to Valley Baptist Hospital from Michael Swetnam overstating policy premium of $2,380,638.42 |
| 3 | Sept. 6, 2006 | Invoice of $2,380,638.42 sent by Michael Swetnam to Valley Baptist for Zurich Umbrella Liability Policy for Sept. 2006 through Sept. 2007 |
| 4 | Nov. 30, 2006 | Zurich Health Care Umbrella Liability Policy for Sept. 2006 through Sept. 2007 period sent to Valley Baptist Hospital from Michael Swetnam overstating policy premium of $2,380,638.42 |
| 5 | June 4, 2007 | Invoice for $884,000 sent to Valley Baptist by Michael Swetnam for Named Storm Coverage Insurance for 2007-08 Hurricane Season |

| 6 | Aug. 31, 2007 | Confirmation of Insurance Binder , RAC RE, Ltd., insuring Valley Baptist for June 1, 2007 through June 1, 2008 for Hurricane Named Storm, showing a false premium of $884,000 sent by Michael Swetnam to Valley Baptist |
|---|---|---|
| 7 | Aug. 31, 2007 | Interim Insurance Binder and Premium Billing regarding Zurich Health Care Umbrella Liability Policy, for Sept. 2007 to Sept. 2008, showing an overstated premium of $2,328,500 sent by Michael Swetnam to Valley Baptist |
| 8 | Nov. 30, 2007 | Zurich Health Care Umbrella Liability Policy, for Sept. 2007 to Sept. 2008 showing an overstated premium of $2,328,500 sent by Michael Swetnam to Valley Baptist |

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 9-10
(Wire Fraud)

A.    **INTRODUCTION**

1.    The Grand Jury adopts, realleges, and incorporates herein the allegations in paragraphs One through Four of the Introduction of this Indictment as if set out fully herein.

B.    **THE SCHEME TO DEFRAUD**

2.    From in or about August 2006 and continuing until on or about April 2008, in the Southern District of Texas and elsewhere,

**BRENT A. CARTER, and
MICHAEL N. SWETNAM, JR.**

14

defendants herein, aided and abetted by others known and unknown to the grand

jury, did knowingly devise and intend to devise a scheme and artifice to defraud

Valley Baptist, and for obtaining money by means of false and fraudulent

pretenses, and in the execution of said scheme and artifice, did knowingly transmit

and cause to be transmitted by means of wire communications in interstate or

foreign commerce, writings, signs, signals, pictures, or sounds, as more fully set

forth below.

**C.    THE MANNER AND MEANS OF THE SCHEME TO
       DEFRAUD**

3.    Among the manner and means by which the defendant sought to

accomplish and did accomplish the purpose of the scheme to defraud were the acts

set forth in paragraph Three of Count One of the Indictment, hereby re-alleged and

incorporated by the Grand Jury as if fully set forth in this Count of the Indictment.

**D.    EXECUTION OF THE SCHEME TO DEFRAUD**

4.    On or about the dates set forth below, in the Southern District of

Texas, and elsewhere, for the purpose of executing the scheme and artifice to

defraud Valley Baptist, and to obtain money and property by means of false and

fraudulent pretenses, representations and promises, and intending to do so, the

defendant knowingly transmitted and caused to be transmitted by means of wire,

15

according to the directions thereon, from the Southern District of Texas to New York, as indicated below, the items described below:

| COUNT | DATE | WIRE | SENDER | RECIPIENT |
|-------|------|------|--------|-----------|
| 9 | Feb. 1, 2007 | $1,314,741.60 | Michael N. Swetnam, Jr. in the Southern District of Texas | Zurich, America Insurance Company in New York |
| 10 | Sept. 24, 2007 | $1,166,665.50 | Michael N. Swetnam, Jr. in the Southern District of Texas | Zurich, America Insurance Company, in New York |

In violation of Title 18, United States Code, Sections 1343 and 2.

## NOTICE OF FORFEITURE

Pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 981(a)(1)(C), the United States gives the defendants

### BRENT A. CARTER and
### MICHAEL N. SWETNAM, JR.

notice that in the event of conviction of any of the offenses charged in this indictment, the United States intends to forfeit the following property:

a.        All property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1341 and

16

1343, or a conspiracy to commit such offenses, including but not limited to the following property:

- real estate and appurtenances located at 3099Y Whipple Road, Los Fresnos, Texas, which is legally described as:

  Lot 10, Cuates Amigos Subdivision in Cameron County, Texas, according to the map of said subdivision recorded in cabinet 1, page 269-B, map records of Cameron County, Texas

b.       A money judgment in an amount equal to the total amount of proceeds derived from each offense for which the defendants are convicted.

Further, a defendant may be jointly and severally liable to the United States with any co-conspirator.

## SUBSTITUTE ASSETS

In the event that the property subject to forfeiture as a result of any act or omission of the defendants:

a.       cannot be located upon exercise of due diligence;

b.       has been transferred, or sold to, or deposited with, a third party;

c.       has been placed beyond the jurisdiction of the Court;

d.       has been substantially diminished in value; or

e.       has been commingled with other property which cannot be divided without difficulty,

17

it is the intent of the United States to seek forfeiture of any other property of the

defendants up to the total value of the property subject to forfeiture, pursuant to

Title 21, United States Code, Section 853(p), incorporated by reference in Title 28,

United States Code, Section 2461(c).

A TRUE BILL

ORIGINAL SIGNATURE ON FILE
FOREPERSON OF THE GRAND JURY

TIM JOHNSON
United States Attorney

By

RYAN D. MCCONNELL
Assistant United States Attorney
(713) 567-9678